IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| YELLOWSTONE RENTAL PROPERTIES, LLC,<br><br>                   Plaintiff,<br><br>vs.<br><br>KRAFT LAKE INSURANCE AGENCY, INC.,<br><br>                   Defendant. | CV 21-79-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |

Plaintiff Yellowstone Rental Properties, LLC ("YRP") brings this action against Defendant Kraft Lake Insurance Agency, Inc. ("Kraft Lake"), alleging breach of contract and violations of Montana's Unfair Trade Practices Act.  (Doc. 30.)

Presently before the Court is Kraft Lake's Motion to Vacate Default Judgment.  (Doc. 71.)  The motion is fully briefed and ripe for the Court's review.  (*See* Docs. 72, 97, 98.)  For the following reasons, the Court recommends that Kraft Lake's motion be **GRANTED**.

I.      **BACKGROUND**

On April 16, 2018, YRP filed suit against Rainbelt Oilfield Services, LLC ("Rainbelt") in Montana state district court.  (Doc. 79 at 2.)  YRP alleged that Rainbelt failed to transport YRP's modular units from Bainville, Montana, to

1

Billings, Montana, resulting in their destruction and approximately $1.8 million in damages. (*See* Docs. 30 at 3; 97 at 5.)

After failing to appear in the state court action, Rainbelt's default was entered on June 11, 2018. (Doc. 79 at 2.) Then, on September 23, 2019, the court entered a default judgment in favor of YRP and against Rainbelt in the amount of $1,764,827.37 plus 8.5% interest. (*See* Doc. 97 at 6–7.)

YRP later acquired potential claims Rainbelt had at a sheriff's sale, consisting of "[a]ll claims, . . . rights to payment, and rights to compensation of every kind and nature, which [Rainbelt] may have against any party, including, but not limited to, any of the foregoing . . . related to liability insurance policies issued to [Rainbelt]." (Doc. 79 at 2.)

After acquiring Rainbelt's claims, YRP filed a second action in state district court on February 5, 2021, alleging first-party and third-party claims against various insurance entities, seeking to hold those entities liable for the default judgment obtained against Rainbelt. (Doc. 3-1 at 16–26.) The defendants then removed the action to this Court on the basis of diversity jurisdiction. (*See* Doc. 1.)

YRP filed its First Amended Complaint (FAC) on March 17, 2022, adding new defendants, including Kraft Lake. (Doc. 30.) Kraft Lake is an entity within the Farmers Insurance Group of Companies ("Farmers"). Therefore, when YRP

2

served process on Kraft Lake's registered agent, the agent transmitted the summons and FAC to Farmers. (Doc. 72 at 9.) Consistent with Farmer's corporate intake procedure, a paralegal at Farmers directed the documents to another group within Farmers, whose role was to (1) determine whether any Farmers insurer companies were named in the lawsuit, (2) rout the documents to the appropriate personnel, and (3) secure legal counsel. (*Id.* at 15.) But the procedure failed at this point. The employee tasked with forwarding the documents could not locate Kraft Lake on a list of Farmers entities, and he incorrectly determined that Kraft Lake was not a Farmers entity. (*Id.* at 9.) Thus, the employee took no further action. (*Id.* at 16.)

As a result, Kraft Lake did not serve an answer or otherwise respond to the FAC prior to its response date on April 19, 2022. (*See* Doc. 35.) Accordingly, on July 6, 2022, YRP moved for entry of default against Kraft Lake, which the clerk entered the following day. (*See* Docs. 52, 53.) YRP then filed a motion for default judgment against Kraft Lake on July 11, 2022. (Doc. 54.) The Court granted YRP's motion, and a default judgement was entered against Kraft Lake on February 24, 2023. (Doc. 63.)

On March 23, 2023, one month after the entry of default judgment, Kraft Lake appeared and filed the instant motion to set aside the default judgment. (Doc. 71.)

3

Since the filing of the motion to set aside the default judgment, YRP filed motions or stipulations for dismissal of all other defendants, all of which the Court granted. (*See* Docs. 83, 84, 87, 88, 91, 93.) YRP also requested several extensions of time to respond to YRP's motion to set aside the default judgment to allow time to conduct discovery on the cause of the default. (Doc. 74, 85, 89.) Those requests were granted, and YRP ultimately filed its response on September 21, 2023. (Doc. 97.)

## II.   LEGAL STANDARD

Kraft Lake moves to vacate the default judgment under Federal Rules of Civil Procedure 54(b), 55(c), and 60(b). (Doc. 71 at 2.) Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Under Rule 60(b), the court is permitted "on just terms" to relieve a party from a final judgment because of "mistake, inadvertence, surprise, or excusable neglect."

When determining whether to set aside a default judgment under Rule 60(b) based on excusable neglect, this Court applies the "*Falk* factors" from the Ninth Circuit's decision in *Falk v. Allen*, 739 F.2d 461 (9th Cir. 1984).[1] The *Falk* factors

---

[1]  Kraft Lake also argues that, since final judgment had not been entered as to all claims and all parties when it filed its motion, relief from the judgment can also be provided under Rule 54(b). Under Rule 54(b), "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the

4

require an evaluation of (1) whether the plaintiff will be prejudiced by setting aside default judgment, (2) whether the defendant's culpable conduct led to the default, and (3) whether the defendant lacks a meritorious defense to the underlying claim. *Falk*, 739 F.2d at 463. The Court may exercise its discretion to deny relief to a defendant based solely on the presence of any one of the three factors, but need not treat any as dispositive. *Brandt*, 653 F.3d at 1111–12. Although the moving party bears the burden of showing that the above *Falk* factors favor setting aside default judgment, "the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696, 700 (9th Cir. 2001).

In addition to the three *Falk* factors, the Ninth Circuit has outlined additional policy concerns that guide motions to set aside default judgment under Rule 60(b). First, because it is intended to be remedial in nature, Rule 60(b) "must be liberally applied." *Falk*, 739 F.2d at 463. Setting aside a default judgment is "a legal discretion, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice." *Butner v.*

---

entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). But even if relief can also be granted under Rule 54(b), the same *Falk* factors would be applied. *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d 1108, 111 (9th Cir. 2011).

5

*Neustadter*, 324 F.2d 783, 786 (9th Cir. 1963) (quoting *Brill v. Fox*, 297 P. 25, 26 (Cal. 1931)).

Further, because default judgment is "a drastic step appropriate only in extreme circumstances[,] a case should, whenever possible, be decided on the merits." *Falk*, 739 F.2d at 463. "[W]here there has been no merits decision, appropriate exercise of district court discretion under Rule 60(b) requires that the finality interest should give way fairly readily, to further the competing interest in reaching the merits of a dispute." *TCI Group*, 244 F.3d at 696.

Finally, "[t]he determination of what conduct constitutes 'excusable neglect' under Rule 60(b)(1) and similar rules 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Brandt*, 653 F.3d at 1111 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

### III.   DISCUSSION

Kraft Lake argues that in weighing the *Falk* factors, "the equities strongly favor vacating the $1.7 million default judgment." (Doc. 72 at 20.) In response, YRP argues that "the factors of prejudice to YRP and the culpable conduct of Kraft Lake far outweigh any argument of a meritorious defense," and that the Court should therefore deny the motion. (Doc. 97 at 12.) Each of the factors will be addressed below.

6

A. **Whether YRP Will Be Prejudiced by Setting Aside Default Judgment**

A plaintiff suffers prejudice under the first *Falk* factor when "his ability to pursue his claim will be hindered" by the court setting aside default judgment. *Falk*, 739 F.2d at 463.  To constitute prejudice, however, the vacating of a default judgment "must result in greater harm than simply delaying resolution of the case," such as "loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion."  *TCI Group*, 244 F.3d at 701 (quoting *Thompson v. American Home Assur. Co.*, 95 F.3d 429, 433–34 (6th Cir. 1996)).

Kraft Lake argues that, considering the case was at an early stage when its motion was filed, vacating the default judgment would not prejudice YRP.  (Doc. 72 at 20.)  In support, Kraft Lake cites *Jacobs v. Bank of America, N.A.*, 2016 WL 4186812 (D. Mont. July 20, 2016), where this Court found that the defendant convincingly showed there would be no prejudice to the plaintiff by setting aside the entry of default.  The Court noted that none of the pretrial deadlines had passed, and the case was still in its earliest stages; consequentially, setting aside default would "simply restore 'the parties to an even footing in the litigation' and allow th[e] case to be decided on the merits."  *Id.* at *2 (quoting *TCI Group*, 244 F.3d at 701).  Although the Court in *Jacobs* was weighing whether to set aside the entry of default, not default judgment, Kraft Lake argues the facts here are similar in that no pretrial deadlines had passed when its motion was filed, and there is

7

nothing to indicate a delay in its appearance negatively impacted YRP's ability to litigate its case. (Doc. 72 at 22–23.)

In response, YRP argues that setting aside the default judgment at this point will result in prejudice because: (1) it has already settled with the other defendants, which will also complicate its ability to engage in new discovery; (2) vacating the judgment would create a risk of fraud and collusion; and (3) Kraft Lake may have already lost or destroyed evidence. These arguments will be discussed in turn.

### 1.   YRP's Settlements with Other Defendants and the Difficulty of New Discovery with Now-Dismissed Defendants

YRP argues that by the time Kraft Lake appeared by filing a motion to set aside default judgment, "YRP and the other parties had essentially finalized discovery and all pretrial procedure with regard to YRP's claims" against those defendants, and shortly thereafter, reached settlements on the merits. (Doc. 97 at 10.) YRP also asserts that the default judgment entered against Kraft Lake—"a liquid, national, and sophisticated company[,] for the entirety of the claimed amount"—made it difficult to reach fair settlements with the other defendants. (*Id.* at 18–19.) YRP further argues that getting the dismissed defendants to participate in discovery will be more difficult going forward. (*Id.* at 19.) For example, YRP emphasizes the importance of discovering an alleged agency agreement between Kraft Lake and the now-dismissed defendant United Financial Casualty Company

("UFCC"), which will be "critical in determining Kraft Lake's exposure for liability in this case." (*Id.*)

In reply, Kraft Lake points out that when it filed its motion to vacate default judgment in March 2023, all other defendants remained parties to the action, and YRP nonetheless agreed to voluntarily dismiss and settle with those defendants while Kraft Lake's motion was pending. (Doc. 98 at 7–8.) Kraft Lake argues that, if the existence of the default judgment against it was an obstacle for YRP in its settlement negotiations with the other defendants, YRP could have waited until the Court ruled on the present motion. (*Id.* at 8–9.) Instead, YRP now seeks to use those dismissals and settlements as a "weapon" against Kraft Lake's motion. (*Id.* at 2, 8.)

In addition, Kraft Lake contends that if YRP already completed discovery with those parties, it should already have most or all of the evidence it needs from them. (*Id.* at 10.) Further, regarding the agency agreement between Kraft Lake and UFCC that YRP believes will be "critical," Kraft Lake asserts there is no evidence that such an agency agreement even exists. (*Id.* at 10; *see* Doc. 97 at 19.) But if one did exist, Kraft Lake points out there is no reason YRP could not obtain it from Kraft Lake or UFCC in discovery. (Doc. 98 at 11.)

The Court agrees with Kraft Lake that YRP was ultimately in the position to decide whether to dismiss and settle with the other defendants while this motion to

9

vacate default judgment was pending.  YRP also requested multiple extensions of time totaling six months to respond to the motion.  During this six-month period, it chose to enter into settlement agreements with the other parties.

YRP cites to no authority supporting the notion that prior settlements with other parties in alleged reliance on a default judgment will preclude vacating that judgment on the basis of prejudice, particularly when the defendant had already moved to vacate the judgment at the time of settlement.  YRP also fails to articulate any tangible obstacles to new discovery it will encounter if the default judgment is set aside.  Again, after Kraft Lake filed the present motion, YRP chose to move forward in such a way where Kraft Lake would be the lone remaining defendant—which, as Kraft Lake points out, "was a pure strategy decision." (Doc. 98 at 8.)  Merely losing what appeared to be "quick victory" does not constitute prejudice.  *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1225 (9th Cir. 2000).

Accordingly, the Court does not find prejudice resulting from YRP's settlement with other parties or in its ability to obtain discovery as a result of those settlements.

### 2. Possibility of Fraud or Collusion

YRP also argues that setting aside the default judgment in this case could lead to fraud or collusion.  YRP points to the fact that Kraft Lake learned of the default judgment from a representative of the Progressive Corp. ("Progressive"), a

now-dismissed defendant, evidencing that "the related insurance companies are colluding at least to the extent that they are sharing information about this matter even when not legally necessary." (Doc. 97 at 19.) Although YRP clarifies that it "does not allege there was any fraud or specific collusion with regard to the acts which occurred here," it asserts, nonetheless, "we cannot rule it out." (*Id.* at 20.)

In reply, Kraft Lake argues that YRP's contentions amount to "speculation" that is "wholly unsupported." (Doc. 98 at 12.) The Court agrees. To the extent the aforementioned communication between Progressive and Kraft Lake demonstrates something more nefarious, YRP has failed to connect the dots. The Court finds the mere potential for fraud or collusion on these facts is insufficient to weigh the prejudice factor in YRP's favor.

### 3. Possibility of Spoliation

Finally, YRP argues there is the possibility that evidence as been lost or destroyed. Kraft Lake's document retention system automatically deletes emails within one year. (Docs. 97 at 16; 98 at 15.) Consequentially, according to YRP, this system would have automatically deleted any emails relevant to (1) a subpoena Farmers received relative to this case in August 2021 from now-dismissed defendants UFCC and Progressive, and (2) past contact with Rainbelt's agent, Bryan McClean, regarding the claims. (Doc. 97 at 16.)

/ / /

Kraft Lake responds that it previously received the UFCC subpoena in August 2021, several months before it was named in the FAC. Kraft Lake states that it searched its records at that time, and confirmed it had no responsive documents related to Rainbelt or its agent. (Doc. 98 at 5–6.) Kraft Lake also points out that because all pertinent allegations in the FAC regarding McClean's procurement of the insurance policy involve actions taken between 2017 and 2019, Kraft Lake's system would have automatically deleted the last of those emails no later than the end of 2020—eight months before Kraft Lake's August 2021 search of its records, and over a year prior to being named in this action. (*Id.* at 6–7.)

The Court is persuaded by Kraft Lake's argument. YRP does not allege any facts to suggest there would have been email communications relevant to this matter which would have existed in August 2021 when it was served with a subpoena, or at the time it was named as a defendant in this action in March 2022. Accordingly, there are no facts here showing that Kraft Lake's delay likely caused the loss or destruction of evidence prejudicing YRP. *See, e.g.*, *Natasha C. v. Visionquest*, 2003 WL 21999591, at *3 (E.D. Pa. Aug. 25, 2003) ("[S]peculative fear of loss of evidence does not suffice to display prejudice."). In short, the Court does not find these arguments persuasive in weighing this *Falk* factor in YRP's favor.

/ / /

Therefore, the Court does not find YRP would be prejudiced by setting aside the default judgment, and this factor weighs in favor of Kraft Lake's motion.

**B.     Whether Culpable Conduct by Kraft Lake Led to the Default**

Under the next *Falk* factor, a defendant's conduct is deemed culpable if the defendant (1) received actual or constructive notice of the filing of the complaint, and (2) intentionally failed to answer. *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1092 (9th Cir. 2011) (citing *TCI Group*, 244 F.3d at 697). Generally, "to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Id.* (citing *TCI Group*, 244 F.3d at 697). Without a demonstration that the other *Falk* factors weigh heavily against setting aside default judgment, "simple carelessness is not sufficient to treat a negligent failure to reply as inexcusable," *id.*, even if the reasons for the delay are "weak," *Bateman*, 231 F.3d at 1225.

For legally sophisticated entities, however, "an understanding of the consequences of its actions may be assumed, and with it, intentionality." *Mesle*, 615 F.3d at 1093. With that said, Ninth Circuit case law "does not require disregarding a sophisticated defendant's intent," and circumstances in some cases can "overc[o]me any presumption of culpability that might otherwise attach to a

13

sophisticated party." *HTP, Inc. v. First Merit Group Holdings, Inc.*, 2022 WL 17958638, at *2 (9th Cir. Dec. 27, 2022).

Kraft Lake acknowledges that it is a sophisticated entity, which allows the Court to infer its culpability in the default. (Doc. 72 at 8.) Kraft Lake argues, however, that the Court should consider Kraft Lake's actual intent—that is, the fact that Kraft Lake did not "deliberately" or "intentionally" fail to appear, nor did it do so "in bad faith." (*Id.* at 8–9, 20, 28.) Kraft Lake points out the only reason it failed to appear was because its name was mistakenly omitted from the Farmers entity lists, and the Farmers employee tasked with consulting those lists did not recognize Kraft Lake as a Farmers entity. (*Id.* at 28.) Therefore, despite its status as a legally sophisticated entity, Kraft Lake asks the Court to weigh the third *Falk* factor in favor of vacating default judgment. (*Id.* at 29.)

Alternatively, if the Court were to assume intentionality, Kraft Lake argues this would not require that the Court deny its motion. (*Id.*) Kraft Lake again points to *Jacobs*, where this Court concluded that "even assuming [the defendant] was culpable, the first two *Falk* factors weigh conclusively in favor of setting aside the entry of default." *Jacobs*, 2016 WL 4186812 at *3. Kraft Lake implores the Court to reach the same conclusion here.

In response, emphasizing Kraft Lake's status as a legally sophisticated entity, YRP argues that Kraft Lake is culpable because its intake system

"predicates mistakes in a consistent and significant manner," while "Kraft Lake and its related entities have not taken steps to avoid future defaults by bettering the system." (Doc. 97 at 13–14.) In addition, YRP again poses the possibility of past spoliation as further support for Kraft Lake's culpability. (*Id.* at 16.)

In reply, Kraft Lake cites the recent Ninth Circuit decision in *PacificSource Health Plans v. Atl. Specialty Ins. Co.*, 2023 WL 4946604 (9th Cir. Aug 3, 2023), for the proposition that "[n]egligent clerical errors, without more, do not establish culpability," and that "[g]enerally, conduct is culpable and inexcusable only when the defendant's active misconduct led to the default." *Id.* at *3. Kraft Lake argues that the mistake that occurred here in its intake system is akin to a negligent clerical error—not misconduct. (Doc. 98 at 17.) It also counters the assertion that this error is part of an ongoing issue within Farmers' intake system with the testimony of the employee who failed to properly forward process in this case. The employee testified that in ten years in his position, this is the only time his list omitted a Farmers-related entity, resulting in a failure to route a summons and complaint to the appropriate entity. (*Id.* at 16; 98-5 at 5–6.)

Given Kraft Lake's status as a legally sophisticated entity, the Court has discretion to infer its culpability. But just like the apparently sophisticated defendant in *PacificSource Health Plans*, Kraft Lake "did not admit—and no facts have been alleged—that it acted intentionally or in bad faith." *PacificSource*

15

*Health Plans*, 2023 WL 4946604 at *2.  *Cf. Est. of Hill Grube v. NaphCare, Inc.*, 2022 WL 1464830, at *1 (E.D. Wash. May 9, 2022) (granting default judgment because defendant "spoliated the video evidence with an intent to avoid its litigation obligations"); *Swisher Hygiene Franchise Corp. v. Clawson*, 2019 WL 4169003, at *8–9 (D. Ariz. Sept. 3, 2019) (denying motion to vacate default judgment because of "ample evidence of bad faith and willful behavior" in defendant's "spoliation of critical evidence").

Given Kraft Lake's explanation of the circumstances of its failure to respond to the FAC, the Court is unpersuaded that Kraft Lake's failure was intentional and finds it has "overc[o]me any presumption of culpability that might otherwise attach to [it as] a sophisticated party."  *HTP, Inc.*, 2022 WL 17958638 at *2.

Therefore, the Court finds that this factor also weighs in Kraft Lake's favor.

### C.    Whether Kraft Lake Lacks a Meritorious Defense

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense."  *TCI Group*, 244 F.3d at 700.  The defendant need only "allege sufficient facts that, if true, would constitute a defense."  *Mesle*, 615 F.3d at 1094.  In other words, the Court need not determine the truth of the factual allegations when weighing a motion to set aside default judgment.  *Id.* (citing *TCI Group*, 244 F.3d at 700).

/ / /

Kraft Lake argues it has an "extremely strong" meritorious defense: it is not an insurance company, it does not issue insurance policies, and it has a "nearly complete lack of involvement in the relevant underlying facts." (Doc. 72 at 8, 20.) Kraft Lake clarifies it is an insurance agency that provides services to Farmers insurance agents, and its involvement here consisted only of referring Rainbelt's insurance agent to a third-party broker when the agent inquired about obtaining insurance coverage for Rainbelt. (*Id.* at 13, 26.) Kraft Lake asserts that it otherwise (1) did not issue any insurance policies to Rainbelt, (2) was not the agent of record for any policy issued to Rainbelt, and (3) did not provide any insurance agency services to Rainbelt. (*Id.* at 8.) Kraft Lake argues that these facts amount to a meritorious defense because "if this case is litigated on the merits, [YRP] will be unable to prove its breach of contract and insurance bad faith claims against Kraft Lake," as these claims are "premised on the incorrect notion that Kraft Lake issued an insurance policy to Rainbelt." (*Id.*)

In response, YRP argues that Kraft Lake was "literally right in the middle of that failure[,] having been the party which connected the ultimate broker (Commercial Insurance Group) and insurer (UFCC) through which Bryan McClean (Rainbelt's agent) procured the relevant coverage from Rainbelt." (Doc. 97 at 7.) YRP asserts that "[w]ithout Kraft Lake, Rainbelt would not have obtained one of the relevant policies in this case." (*Id.*) Nonetheless, YRP does

17

not forcefully dispute Kraft Lake's arguments regarding its asserted meritorious defense, and instead dismisses it as "largely irrelevant" because the other *Falk* factors weigh heavily in YRP's favor. (*Id.* at 21.) YRP argues that even if the Court finds that Kraft Lake has a meritorious defense, the Court should still deny Kraft Lake's motion to vacate default judgment because of "the clear culpability of Kraft Lake and the prejudicial [e]ffect of Kraft Lake's significant delay." (*Id.* at 21–22.)

In reply, Kraft Lake argues that it has "allege[d] sufficient facts that, if true, would constitute a defense," which is sufficient for purposes of this analysis. (Doc. 98 at 13 (citing *Mesle*, 615 F.3d at 1094).) Kraft Lake points out that YRP's FAC is "devoid of allegations" establishing Kraft Lake's liability, and while Kraft Lake "has alleged facts that would constitute an absolute defense" to those claims, YRP has not rebutted those facts in its briefing. (*Id.* at 14.)

Returning to the policy concerns that the Ninth Circuit has set out to guide courts in resolving motions to set aside default judgment, this Court must exercise its legal discretion in this dispute "in a manner to subserve and not to impede or defeat the ends of substantial justice." *Butner*, 324 F.2d at 786. As in all cases, "the finality interest should give way . . . to further the competing interest in reaching the merits" of this dispute. *TCI Group*, 244 F.3d at 696. Given the apparent strength of Kraft Lake's meritorious defense and the lack of a forceful

rebuttal by YRP, this factor weighs heavily in Kraft Lake's favor and in the Court's analysis in resolving this motion.

In summary, the Court finds that Kraft Lake has met its "not extraordinarily heavy" burden of showing that the *Falk* factors favor setting aside default judgment. *TCI Group*, 244 F.3d at 700. Kraft Lake has persuaded the Court that (1) YRP will not be prejudiced, (2) Kraft Lake's mistake in the default did not constitute culpable conduct, and (3) Kraft Lake has a meritorious defense. Under the circumstances presented here, "doubt, if any, should be resolved in favor of the motion to set aside the judgment." *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987). The Court is not persuaded that this case presents such "extreme circumstances" to forgo deciding it on the merits. *Falk*, 739 F.2d at 463. Therefore, the Court finds there is good cause under Fed. R. Civ. P. 55(c) and 60(b) to set aside the default judgment entered against Kraft Lake.

## IV.   CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that Defendant Kraft Lake's Motion to Vacate Default Judgment (Doc. 71) be **GRANTED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to

the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.  D. Mont. L.R. 72.3.

DATED this 21st day of November, 2023.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge